IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| ABEL GONZALES,<br><br>        Plaintiff,<br><br>vs.<br><br>MIKE MAHONEY, et. al.,<br><br>        Defendants. | CV-09-0001-H-DWM-RKS<br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM |

Plaintiff Abel Gonzales is a prisoner representing himself and proceeding in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff's Complaint alleges a denial of medical care while incarcerated in the Montana State Prison.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  STATEMENT OF THE CASE

### A.    Parties

Plaintiff is a state prisoner incarcerated at Montana State Prison in Deer Lodge, Montana.

The named Defendants are:  Mike Mahoney, Warden of the Montana State Prison; Dr. Liz Rantz, Medical Director at Montana State Prison; Dr. Kohut, and

Dr. Kathleen Evans.

## B.  Factual Background[1]

Plaintiff's Complaint describes Plaintiff suffering from neck problems beginning in July 2004.  Because his Complaint was signed on December 31, 2008, the Court will only consider events within the three-year statute of limitation period, i.e., between December 31, 2005 and December 31, 2008.

On January 17, 2006, Plaintiff submitted a medical request indicating his pain medications had worked until that week.  Plaintiff was taking Naproxyn at that time.  He was seen on January 18, 2006 and placed on steroids for five days per Dr. Danshem.  On February 22, 2006, Plaintiff had an MRI of his cervical spine.

On March 18, 2006, Plaintiff was seen for blood in his urine.  Dr. Evans ordered a urine culture.  On March 28, 2006, Plaintiff submitted a medical request indicating the bleeding had not stopped.

On March 23, 2006, Plaintiff was seen by Dr. Richard Day at the Montana Neurosurgery Center in Missoula, Montana.  Dr. Day indicated Plaintiff had been

---

[1]In setting forth the factual background and its analysis, the Court has relied on the documents Plaintiff attached to his Complaint.  *See* Fed.R.Civ.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

treated with nonsteroidal anti-inflammatory agents, physical therapy, and a short course of steroids with limited results.  He reported the cervical plain films and MRI revealed "foraminal stenosis at C6-7."  He diagnosed Plaintiff with a "chronic left C7 radiculopathy characterized primarily by a C7 pattern of pain and sensory disturbance."  His overall conclusion was, "there is room for improvement with surgical intervention with an anterior cervical diskectomy and fusion at C6-7."  He stated the use of Neurontin for pain may be effective but he would not recommend narcotics.

On May 9, 2006, Plaintiff underwent an EMG test which verified Dr. Day's March 23, 2006 report.  On June 16, 2006, Plaintiff was told by Dr. Evans that the surgery had been or would be scheduled.  (Document 2–Complaint, Voluminous Exhibit R).

In an April 16, 2006 medical request Plaintiff again mentioned the bleeding in his urine and that PA Payne indicated it could be a kidney stone.   He was advised by the PA and Dr. Evans to stop taking his pain medication (Naproxen) because of the blood in his urine.  Plaintiff expressed a desire for his neck surgery because the pain was bad and he was afraid his pain medications were causing blood in his urine.

On July 13, 2006, Plaintiff was again seen by Dr. Day who "expressed to Plaintiff the diagnosis of his medical problems and the effects of any possible surgery's [sic]."  (Document 2–Complaint, p. 8, ¶ 18).  Dr. Day sent a report to Dr. Evans stating Plaintiff was seen for counseling regarding the results of his EMG. Dr. Day explained to Plaintiff that since he had failed multiple conservative therapies, surgery was a treatment option.  He described the surgery as elective. He stated Plaintiff's condition was not threatening life or limb but there was some potential for Plaintiff to develop weakness over time.  (Document 2–Complaint, Voluminous Exhibit T–July 13, 2006 Day report).

On September 13, 2006, Plaintiff sent a grievance form complaining he had not received the appropriate medical attention surrounding his nerve problem in his back leaving his left arm and neck virtually numb and in pain for the last three years.  The response to the grievance was that his case was to be reviewed by the medical review panel, Dr. Rantz would talk to Dr. Day for recommendations, and he would be seen by physical therapy and Dr. Rantz.

On November 2, 2006, Plaintiff was seen for urinating large amounts of blood.  He was taken to St. James Hospital where he underwent a CT scan and had a catheter placed.  He was diagnosed with a bladder tumor and it was

recommended he be seen by a urologist as soon as possible.  From November 2, 2006 to November 9, 2006, Plaintiff was admitted to the prison infirmary due to the constant bleeding and blood clots in his urine as a result of the bladder tumor. Plaintiff was treated with pain medications and had his urine monitored and bladder flushed during his stay at the infirmary.  Both Drs. Evans and Kohut saw Plaintiff in the infirmary.  On November 9, 2006, Plaintiff was taken to St. Patrick's Hospital in Missoula.  On November 10, 2006, Dr. Karl Westenfelder performed a transurethral resection of the bladder lesion as well as a clot evacuation.  Plaintiff told Dr. Westenfelder he had a history of intermittent blood in his urine since January but he thought it was kidney stones and it would pass. He reported this came and went infrequently.  There is no indication Plaintiff submitted any other grievances regarding his blood in his urine other than in March and April 2006.  Records indicate Plaintiff had some follow-up tests done on December 6, 2006 to see if he had any more tumors.

On December 9, 2006, Plaintiff sent Dr. Rantz a medical request asking about whether surgery had been scheduled because his pain was "unbearable." (Document 2–Complaint-Voluminous Exhibit BB).  On January 17, 2007, Plaintiff sent a medical request indicating his pain is getting worse.  On March 6, 2007,

Plaintiff sent a medical request stating two of his fingers were numb.  Dr. Rantz

responded that surgery was scheduled.

Plaintiff had surgery on his neck in March 2007 and a follow up visit in

early July at which Plaintiff said his neck was fine.  On July 18, 2007, Plaintiff

submitted a medical request asking to be seen regarding the constant pain after his

surgery on the right side of his arm which was the opposite side of his original left

sided pain and surgery.  He stated he had a headache for six days.  On July 19,

2007, Plaintiff was seen and put on Roboxin and Lodin for five days.  When that

did not seem to work, Dr. Kohut put him on a lower dose of Roboxin and Lodin

for an additional five days.  Plaintiff saw Dr. Kohut on August 29, 2007 but

refused the recommended medications because it would take a few weeks to begin

working.  He also refused antidepressants.  On September 11, 2007, a nurse

responded to his grievance as follows:

> Dr. Rantz is only at MSP 1-2 days a month and does not regularly see
> patients.  Meds such as Amitryptilline is commonly used to treat
> chronic pain as are other meds not originally created as such.  Many
> meds have multiple uses.  Immediate relief may not be possible,
> please work with our staff to deal the problems.  We do no use 'fast
> acting'/narcotics to treat headaches.

(Document 2–Complaint, Voluminous Exhibits).

On September 16, 2007, Plaintiff submitted an emergency medical

grievance indicating the medication he was receiving for his headaches was not

working.  Dr. Rantz responded that Plaintiff had a CT scan and an appointment

with Dr. Day on September 20, 2007 and Dr. Kohut would discuss pain

management with him after they got the report.

At Plaintiff's visit, Dr. Day noted improvement in Plaintiff's condition, a

successful fusion, and that the headaches were not related to the neck problem

Plaintiff was seen by Dr. Kohut on October 10, 2007.  On November 15,

2007, Plaintiff submitted another medical request regarding his severe headaches

indicating the medications Defendants wanted him to take were antidepressants

and they only made him very angry all the time and did not help his headaches.

Dr. Rantz responded by stating Plaintiff was scheduled to see Dr. Heaton since he

was not satisfied with Dr. Kohut.

On February 12, 2008, Plaintiff submitted another medical request

explaining that none of the medications had worked regarding his constant

headaches.

## C.  Plaintiff's Allegations

Plaintiff alleges Defendants took an inexcusable amount of time in

acquiring medical attention for Plaintiff.  Specifically he contends (1) that he spent

years trying to receive a proper diagnosis regarding the nerve damage in his neck

before receiving surgery; (2) that he had been complaining of nerve damage in his

neck on the opposite side of his body and not received appropriate follow-up; (3)

he complained about constant headaches over a long period of time and was only

given antidepressants; and (4) there was a delay in diagnosing and providing

treatment for a bladder tumor.

## II.  PRESCREENING

### A.  Standard

As Plaintiff is a prisoner proceeding in forma pauperis, his Complaint is

subject to screening under 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.  Section

1915A reads in pertinent part as follows:

> The court shall review  . . .  as soon as practicable after docketing, a
> complaint in a civil action in which a prisoner seeks redress from a
> governmental entity or officer or employee of a governmental entity
> [and][o]n review, the court shall identify cognizable claims or dismiss
> the complaint, or any portion of the complaint, if the complaint (1) is
> frivolous, malicious, or fails to state a claim upon which relief may be
> granted; or (2) seeks monetary relief from a defendant who is immune
> from such relief.

28 U.S.C. § 1915A(a) and (b); *see also* 28 U.S.C. § 1915(e)(2)(B)

("Notwithstanding any filing fee, or any portion thereof, that may have been paid,

the court shall dismiss the case at any time if the court determines that  . . .  (B) the

action or appeal-(i) is frivolous or malicious; (ii) fails to state a claim on which

relief may be granted; or (iii) seeks monetary relief against a defendant who is

immune from such relief.").

Sections 1915A(b) and 1915(e)(2)(B) allow for the dismissal of a complaint

before it is served upon the defendants if it is "frivolous" or "fails to state a claim

upon which relief may be granted."  A complaint is frivolous, if it "lacks an

arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109

S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989).  A complaint fails to state a claim

upon which relief may be granted if a plaintiff fails to allege the "grounds" of his

"entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.

1955, 1964-65, 167 L.Ed.2d 929 (2007) (quotation omitted).  This requirement

demands "more than labels and conclusions, [or] a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. 544.  A complaint must "'give

the defendant fair notice of what the . . . claim is and the grounds upon which it

rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

(2007)(quoting *Bell*, 127 S.Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41,

47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957))).

Rule 8(a)(2) requires a complaint to "contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).  The "plausibility standard" is guided by "[t]wo working principles," *Iqbal,* 129 S.Ct. at 1949.  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.  "Second, only a complaint that states a plausible claim for relief survives" and "[d]etermining whether a complaint states a plausible claim for relief will, . . . , be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal.* 129 S.Ct. at 1949 (internal quotation marks and citation omitted).

The court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 129

S.Ct. at 1950.  Legal conclusions must be supported by factual allegations. *Iqbal,* 129 S.Ct. at 1950.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

Even after *Twombly*, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 127 S.Ct. at 2200; *Cf.* Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

Although the statute requires a dismissal for the reasons stated, it does not deprive the district court of its discretion to grant or deny leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The court can decline to grant leave to amend if "it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez*, 203 F.3d. at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Leave to amend is liberally granted to pro se litigants unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (citing *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).

### B.  Analysis

#### 1.  Eighth Amendment Standard

Plaintiff brings his claims pursuant to the Eighth Amendment of the United

States Constitution.  The Eighth Amendment requires that prisoners receive

adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also*

*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

*grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  To

state an arguable section 1983 claim for failure to provide medical care, a prisoner

must allege a defendant's "acts or omissions [were] sufficiently harmful to

evidence a deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at

106; *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986).

"Under the Eighth Amendment's standard of deliberate indifference, a

person is liable for denying a prisoner needed medical care only if the person

'knows of and disregards an excessive risk to inmate health and safety.'"  *Gibson v.*

*County of Washoe*, 290 F.3d 1175, 1187-88 (9th Cir. 2002) (*citing Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)).  Deliberate indifference under the Eighth

Amendment involves the consideration of two elements:  "[1] the seriousness of

the prisoner's medical need[;] and [2] the nature of the defendant's response to

that need." *McGuckin, 974 F.2d at 1059*; *see also Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003)*.  That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)*(*citing Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer, 511 U.S. at 835*.  "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corrections, 220 F.Supp.2d 1098, 1105 (N.D.Cal. 2002)*; *see also Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)* (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).  State prison officials have "wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986)*.  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)*.

## 2. Neck Pain

Plaintiff's factual allegations do not plausibly establish a claim for denial of medical care.  First, Plaintiff has not established Defendants were deliberately indifferent with regard to the alleged delay in obtaining surgery for his neck in March 2006.  Plaintiff started complaining about his neck pain in July 2004 and had surgery on his neck in March 2007.  The delay of two and a half years alone is insufficient to state a claim for deliberate indifference.  Plaintiff's Complaint and the documents attached thereto demonstrate Plaintiff was receiving medical treatment throughout this period.  He was receiving x-rays, MRIs, CT scans, multiple consultations with an outside neurologist, was prescribed pain medications, received physical therapy, and steroids.  The records establish Defendants considered and monitored the seriousness of Plaintiff's problems and ultimately surgery was done by an outside specialist to correct those problems.  "[M]ere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference."  *Shapley v. Nevada Bd. of State Prison Comm.,* *766 F.2d 404, 407 (9th Cir. 1985)*.  There must be evidence the denial was harmful.  Although Plaintiff set forth well-pleaded factual allegations, assuming the veracity of such, they do not plausibly give rise to an entitlement to relief.

Similarly, Plaintiff failed to state a claim regarding his treatment after July 2007.  Again, it appears from Plaintiff's Complaint and the documents attached thereto that Defendants were in the process of diagnosis and managing Plaintiff's neck pain and headaches after his surgery.  A constant process of attentiveness and treatment (albeit not Plaintiff's preferred method of treatment) is insufficient to establish deliberate indifference.  Plaintiff's factual allegations do not plausibly give rise to an entitlement to relief.

### 3.  Bladder Tumor

With regard to Plaintiff's bladder issues, it appears from Plaintiff's Complaint that he made complaints regarding blood in his urine in March and April of 2006 and he received treatment at that time.  There is some evidence in the documents attached to Plaintiff's Complaint that he continued to have blood in his urine after April 2006.  But there is no indication Plaintiff made any further complaints of blood in his urine until November 2006 when he was taken to the hospital.  Furthermore, he has not alleged what effect any delay in diagnosis or treatment of his bladder issues may have had.  Plaintiff was seen, treated, and diagnosed in March when he first complained of blood in his urine, he was taken to the hospital and treated at the prison's infirmary when his tumor was

discovered, and ultimately he had surgery.  The Court cannot say these facts

plausibly give rise to a claim of deliberate indifference.

## III. CONCLUSION

### A.  Leave to Amend

For the reasons set forth above, Plaintiff's Complaint fails to state a claim

upon which relief may be granted.  The Court has reviewed the Complaint and the

detailed medical records submitted by the Plaintiff.  It is clear from all the

information submitted by the Plaintiff that he could allege no other facts which

would cure the defects in his Complaint or state a plausible claim for relief.  At the

most, Plaintiff can state only a negligence case, which is not cognizable under

Section 1983.  _Estelle_, 429 U.S. at 106.  As such, Plaintiff's Complaint should be

dismissed.

### B.  "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act (PLRA) prohibits prisoners from bringing

forma pauperis civil actions if the prisoner has brought three or more actions in

federal court that were dismissed for frivolousness, maliciousness, or for failure to

state a claim.  28 U.S.C. § 1915(g).  The Court should designate this case as a

"strike" under this provision because Plaintiff fails to state a claim upon which

relief may be granted.

## C.  Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

[A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless: (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."  The good faith standard is an objective one.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke*, 490 U.S. at 325, 327; *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).  "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit."

*Walker v. O'Brien*, 216 F.3d 626, 631 (9th Cir. 2000).

Plaintiff's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit.  Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

**D. Address Changes**

At all times during the pendency of these actions, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date.  The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

**RECOMMENDATION**

1.  Plaintiff's Complaint should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

2.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Plaintiff failed to state a claim upon which relief may be granted.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.  The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District

Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of

Appeals.  Any notice of appeal pursuant to Fed.R.Civ.P. 4(a)(1), should not be

filed until entry of the District Court's final judgment.

DATED this 30th day of July, 2009.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge